## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **David McKinley Clevenger,** | ) | **Case No. 19-42680** |
| | ) | |
| Debtor. | ) | **Chapter 13** |
| | ) | |
| | ) | |
| **Bank Northwest,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. No. 20-4019** |
| | ) | |
| | ) | |
| **David McKinley Clevenger,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Bank Northwest brings this adversary proceeding under 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), and (a)(6), asking the court to except from discharge the debt defendant David Clevenger owes it. Bank Northwest alleges David (1) obtained the debt using false pretenses, a false representation, or actual fraud under § 523(a)(2)(A); (2) obtained the debt by intentionally deceiving the bank using a written, materially false statement respecting an insider's financial condition that the bank reasonably relied on under § 523(a)(2)(B); and (3) willfully and maliciously injured the bank under § 523(a)(6) by transferring a portion of the bank's collateral to a relative without notifying the bank or paying it the sale proceeds. David argues the debt is dischargeable because the bank failed to meet its burden of proof on all three counts.

For the reasons explained below, the court determines (1) § 523(a)(2)(A) does not apply to the factual circumstances of this adversary proceeding; (2) the bank did not meet its burden to prove all elements of § 523(a)(2)(B); and (3) even if § 523(a)(6) applies, the bank did not meet its burden to prove all elements of § 523(a)(6). Thus, the debt David owes the bank is dischargeable.

## JURISDICTION

The court has jurisdiction under 28 U.S.C. §§ 1334 and 157(a). This adversary proceeding is statutorily core under 28 U.S.C. § 157(b)(2)(I) and is constitutionally core. The court therefore has the authority to hear this matter and make a final determination. No party has contested jurisdiction or the court's authority to make a final determination.

## BACKGROUND

The court held a trial in this adversary proceeding on September 16, 2020. Three witnesses testified: (1) David; (2) Clint Mitchell, Executive Vice President at Bank Northwest; and (3) Jan Wansing, Vice President and Loan Officer at The Bank of Orrick. The court found Mitchell and Wansing to be forthcoming and credible. But the court found David to be evasive and not credible, particularly on the key issue of who owns the equipment listed on the balance sheet.

During the trial, the court admitted into evidence Plaintiff's Exhibits 1–26 and Defendant's Exhibits A, F, G, and H. The court also took judicial notice of all the pleadings in this adversary proceeding (20-4019), the underlying chapter 13 bankruptcy case (19-42680), David's prior chapter 7 bankruptcy case (15-43605), and

the adversary proceeding The Bank of Orrick filed against David in that prior case (16-4031).

The debt at issue in this adversary proceeding arises from a May 2015 loan in the original amount of $129,060 that the bank made to David, his son Chance, and Double C Farms, LLC (an entity David and Chance jointly own). Mitchell testified that the Clevengers had lost several items of personal property in a fire in mid- to late-April 2015, and that the bank granted the loan to help the borrowers quickly purchase replacement equipment in their time of need.

Prior to granting the loan, Mitchell worked with David and Chance to create a balance sheet specifying the assets that would serve as collateral for the loan—as was the bank's common practice when conducting due diligence on a loan request. Though he was present at the meeting and helped prepare the balance sheet, David says he did not review the balance sheet; he "just signed [it]."

The balance sheet stated that Double C Farms owned twenty-two items of equipment with a total value of $333,300. Among other assets allegedly belonging to Double C Farms, the balance sheet listed a John Deere 4450 tractor with an estimated $30,000 fair market value. The bank ran a UCC-1 search on Double C Farms with the Missouri Secretary of State and found nothing in the record other than a purchase money security interest financing statement the bank had filed in connection with an earlier loan. After the parties executed the May 2015 promissory note and security agreement, the bank perfected its liens in the equipment by filing a UCC-1 financing statement with the Missouri Secretary of State listing David,

3

Chance, and Double C Farms as debtors and identifying, among other things, "all farm equipment" as collateral.[1]  Mitchell testified that the bank relied on the balance sheet when it made the loan.

It appears from the record that the security agreement gave the bank liens in some of the equipment that the April 2015 fire had previously destroyed.  For example, the balance sheet lists the following equipment the fire destroyed:  a JD 275 disc mower, a JD 568 baler, a Bobcat 753 skidsteer, a Frontier hay tedder, and a Grass Hopper lawn mower.  As the parties likely intended, the borrowers used the loan proceeds to purchase replacement equipment, then the bank eventually received the insurance proceeds from the loss of the destroyed equipment and applied the insurance proceeds to reduce the principal balance on the loan.  As a result of this arrangement, it appears the bank has received payment for its security interest in the collateral that the April 2015 fire destroyed.

Double C Farms, David, and Chance defaulted under the terms of the 2015 note and security agreement. The bank subsequently entered into two changes in terms agreements with them on July 24, 2017, and November 24, 2017.

But communications between the bank and the borrowers broke down in 2018. So the bank initiated a collection action against the borrowers in the Circuit Court of Ray County, Missouri.  In April 2019, the Ray County court awarded the bank the right to possess the equipment securing the loan; a judgment for the value of any

---

[1]  Though the bank did not include the UCC-1 financing statement in the trial exhibits, the bank previously attached it as an exhibit to the motion for relief from the automatic stay it filed in the underlying chapter 13 case on November 25, 2019.  Case No. 19-42680, ECF No. 16.

unreturned equipment; and a $97,111.48 judgment for unpaid principal, accrued interest, and attorney's fees and expenses, with interest accruing on the judgment at 21% annually ($44.73 per day).

The Ray County Sheriff executed on that judgment later in 2019, seizing four pieces of the equipment and levying against two parcels of real estate. The sheriff subsequently scheduled an execution sale of the four pieces of equipment and land for October 28, 2019, and stored the equipment pending the sale.

Despite numerous attempts, the bank was not able to locate or take possession of the tractor. On at least one occasion, David thwarted the bank's collection attempts by claiming his father, Clarence, owned the tractor.

One week before the sheriff's sale, David filed his bankruptcy petition, stopping the sheriff's sale. The bank subsequently filed the present complaint objecting to the dischargeability of David's debt to it.

During the trial in this adversary proceeding, Mitchell testified extensively concerning the 2015 loan, including the bank's due diligence, the creation of the balance sheet, and the bank's reliance on the balance sheet; the subsequent loan default; and the bank's efforts to collect on its loan and recover its collateral. Wansing testified about the lending relationship between David and The Bank of Orrick, including David's default on his loan with The Bank of Orrick and the litigation that ensued after his default. David testified generally about the 2015 loan, the ownership of the equipment, and the insurance payment for the equipment that the fire destroyed.

5

At the conclusion of the evidence, the bank's counsel summarized the bank's contention that David falsely represented that Double C Farms owned the following specific items of equipment in the balance sheet:

| # | ITEM | BALANCE SHEET VALUE |
|---|------|---------------------|
| 3 | H&S Hay Rake | 16,800 |
| 10 | JD LGP 650 Bulldozer | 40,000 |
| 11 | JD 4450 Tractor | 30,000 |
| 15 | EZ Trail Bale Trailer | 3,500 |
| 19 | NH Side Rake | 500 |
| 22 | Grass Hopper Lawn Mower | 8,000 |

But at trial, the parties focused on David's misrepresentation concerning the JD 4450 tractor.

The court likewise determines David's representation that Double C Farms owned the JD 4450 tractor is the only misrepresentation at issue in this adversary proceeding.

It appears the bank has a perfected lien in the H&S hay rake, bulldozer, bale trailer, and NH side rake because David and Double C Farms were both grantors under the security agreement, and the record reflects that either David or Double C Farms presently own those four items of equipment.  David's original Schedule A/B reflects that David owns the H&S hay rake, bulldozer, bale trailer, and NH side rake. But in the amended schedules, David lists the NH side rake as his and the H&S hay rake, bulldozer, and bale trailer under the notation that Double C Farms "allegedly owns assets that were contributed by Debtor and his son Chance Clevenger for its operations."  Based on this evidence, it appears that either David or Double C Farms owns the hay rake, bulldozer, bale trailer, and side rake.  As discussed above, the

bank holds a perfected lien in all equipment that each of David, Chance, and Double C Farms owns. Consequently, David's alleged misrepresentation concerning these four items did not jeopardize the bank's lien in that equipment.

David's alleged misrepresentation concerning the Grass Hopper lawnmower is also not at issue in this adversary proceeding because the insurance proceeds the bank received for its value compensated the bank for its interest in the lawnmower. As discussed above, the lawnmower was among the equipment destroyed in the April 2015 fire for which the bank received the insurance proceeds in accordance with the parties' apparent intent at the time of the loan (though David purchased the damaged lawn mower from the bank and rebuilt it later). Because the insurance proceeds made the bank whole as to its interest in the lawnmower, David's representation concerning the lawnmower did not jeopardize the bank's security interest.

David now alleges that his father owned the JD 4450 tractor when the parties completed the balance sheet. Because the bank took liens on the equipment David and Double C Farms owned in 2015 but did not take liens on equipment David's father owned, David's alleged misrepresentations on the balance sheet jeopardized the bank's lien in the tractor. Consequently, the only real dispute here is whether David's alleged misrepresentation about the ownership of the tractor is sufficient to except from discharge any of David's debts to the bank.

## ANALYSIS

Generally, after making all required payments under their plans, chapter 13 debtors may receive a discharge. 11 U.S.C. § 1328(a). Section 1328(a), however,

incorporates many of the provisions of § 523(a) that except certain debts from the chapter 13 discharge—including the subsections underlying the first two counts of the bank's complaint: §§ 523(a)(2)(A) and (B). But § 1328(a) does not incorporate § 523(a)(6), the subsection underlying count three of the bank's complaint. Because § 523(a)(6) may not apply, the court first discusses §§ 523(a)(2)(A) and (B).

Sections 523(a)(2)(A) and (B) of the Bankruptcy Code except from discharge "debts arising from various forms of fraud." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1758 (2018). Though both subsections govern instances when a debtor obtains a debt by fraud, §§ (a)(2)(A) and (a)(2)(B) are mutually exclusive. *Rose v. Lauer (In re Lauer)*, 371 F.3d 406, 413 (8th Cir. 2004). Section 523(a)(2)(B) applies when a debtor fraudulently obtained a debt using written statements respecting the debtor's or an insider's financial condition. In contrast, § 523(a)(2)(A) applies when a debtor obtained a debt through fraudulent means other than a statement respecting the debtor's or an insider's financial condition.

A statement respects someone's financial condition when the statement directly relates to and impacts its "aggregate financial condition." *Lamar*, 138 S. Ct at 1761. Because a statement about a single asset can "help indicate whether [someone] is . . . able to repay a given debt," a statement about a single asset may respect a person's aggregate financial condition. *Id.*

The court determines § 523(a)(2)(B) governs the court's analysis in this adversary proceeding because David's representation that Double C Farms owned the tractor respected his insider's financial condition. David owns a 50% membership

8

interest in Double C Farms, so Double C Farms is David's insider.  11 U.S.C. §§ 101(2) (defining affiliate), 101(9) (defining corporation), 101(31) (defining insider to include affiliate); *Crocker v. Matthews (In re Matthews)*, 599 B.R. 838, 863–64 (Bankr. D. Md. 2019) (analyzing statute and determining that debtor's more than 20% membership interest in limited liability company made limited liability company an insider); *Sherron Assocs. Loan Fund XXI (Lacey) L.L.C. v. Thomas (In re Parks)*, 503 B.R. 820, 827–29 (Bankr. W.D. Wash. 2013) (analyzing statute and holding that debtor's 33% ownership of limited liability company made limited liability company an insider of the debtor).  David's statement about the ownership of the tractor impacts Double C Farms' aggregate financial condition and therefore respects an insider's financial condition.  By listing the tractor on Double C Farms' balance sheet, David provided the bank with an inaccurate picture of Double C Farms' ability to repay the debt. Because David's representation that Double C Farms owned the tractor is a statement respecting an insider's financial condition, § 523(a)(2)(B) applies, but § 523(a)(2)(A) does not.

Because the court determines § 523(a)(2)(A) does not apply to these facts, the court analyzes only §§ 523(a)(2)(B) and 523(a)(6) below.

## I.        11 U.S.C. § 523(a)(2)(B)

To deny a debtor's discharge under § 523(a)(2)(B), the court must determine the debtor obtained a debt using a statement (1) that the debtor made in writing, (2) that was materially false, (3) that respected the debtor's or an insider's financial condition, (4) on which the creditor reasonably relied, and (5) that the debtor made

with intent to deceive. 11 U.S.C. § 523(a)(2)(B). The party objecting to discharge—in this case, the bank—bears the burden of proving nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 283–91 (1991).

## A.     David made a written statement when he signed the balance sheet.

First, the court must determine whether the debtor made a statement in writing. To satisfy this element, the plaintiff need not prove the debtor physically prepared the relevant written statement. *Cap. City Bank & Trust v. Kroh (In re Kroh)*, 88 B.R. 987, 994 (Bankr. W.D. Mo. 1988). Proof that the debtor wrote, signed, or adopted and used the written statement satisfies this element. *Id.*

Here, the parties agree the balance sheet listing the tractor was a written statement. Although the bank representative physically prepared the balance sheet, David was present and participated in the meeting when the bank created it. And by signing the balance sheet, David adopted it as his statement. He therefore made a written statement within the meaning of § 523(a)(2)(B). Thus, the bank satisfied the first element.

## B.     Though David's written statement was false, it was not materially false.

Second, the court must determine whether the debtor's statement was materially false. A statement is false if it contains a misrepresentation or has major omissions. *Id.* A false statement is material if it "paints a substantially untruthful picture of the debtor's financial condition by misrepresenting information that would

10

normally affect the lender's decision to extend credit." *Se. Neb. Coop. Corp. v. Schnuelle (In re Schnuelle)*, 441 B.R. 616, 623 (B.A.P. 8th Cir. 2011).

Here, the court determines David's statement that Double C Farms owned the tractor and the other equipment was false. At the time the bank loaned the money, David represented that Double C Farms owned the tractor and the other equipment. But David's prior state court litigation position (discussed in part E below), the schedules he filed in his underlying chapter 13 case (19-42680), and his testimony in this proceeding all paint a different picture.

With respect to the other equipment, it appears that David (and not Double C Farms) owned that equipment in 2015 and still owns that equipment—at least according to David's Schedule A/B.[2] Consequently, David's statement on the balance sheet that Double C Farms owned the equipment was false.

Nevertheless, his misrepresentation about the other equipment is not materially false because it does not appear to have any material negative impact on the bank. The security agreement at issue in this adversary proceeding listed both David and Double C Farms as grantors and gave the bank liens on the equipment itemized on the balance sheet. As discussed above, the bank filed a UCC-1 financing statement naming David and Double C Farms as two of the debtors and identifying their equipment as collateral. So the bank has a valid, perfected lien in all equipment either Double C Farms or David owns. Because David's representation that Double

---

[2] As the court previously noted, David's amended Schedule A/B lists the bulldozer, bale trailer, and H&S hay rake under a confusing and ambiguous notation that Double C Farms "is alleged to own" some equipment.

C Farms owned the other equipment did not jeopardize the bank's security interest in the other equipment, David's misrepresentation concerning the other equipment was not materially false.

But the tractor is a more complicated story. David testified that his father, Clarence, owned the tractor at all relevant times and then transferred it to Austin. In his Rule 2004 examination and at trial, David testified he never owned the tractor. And neither party presented any evidence that Double C Farms ever owned the tractor. Because Double C Farms did not own the tractor, David's statement about who owned the tractor was false. But was it materially false?

The materiality of David's misrepresentation concerning the tractor is a much closer call. Because neither David nor Double C Farms owned the tractor, David's misrepresentation concerning its ownership jeopardized the bank's security interest. The stated value of the tractor on the balance sheet was $30,000. Thus, the tractor represents nearly 25% of the loan amount. And it appears from the record that this $30,000 asset could very well make a big difference in the court's determination of whether the bank is oversecured and entitled to postpetition interest and fees in David's chapter 13 case. So if the court could consider present circumstances, and if the bank's entitlement to postpetition interest and fees is the type of information that would normally affect the decision to extend credit, then it would be quite easy to determine that David's false statement about the tractor is presently material.

But the focus of § 523(a)(2) is on the circumstances existing when the debt was "obtained" (here, in May 2015) and not some later period after default. 11 U.S.C.

§ 523(a)(2) (excepting from discharge debts "to the extent *obtained* by" falsity or fraud) (emphasis added); *see Marcusen v. Glen (In re Glen)*, 639 F.3d 530, 533 (8th Cir. 2011) (stating plaintiffs must prove debtors obtained money or property from them concurrent with the debtors' misrepresentation). Consequently, the court may not consider the tractor's impact on the bank's current efforts to be treated as an oversecured creditor in David's chapter 13 case.

Under the circumstances that existed at the time of the loan, the court determines David's false statement about the tractor was not material. The balance sheet states the value of all equipment owned by Double C Farms was $333,300 and Double C Farms' net worth was $451,623—making the tractor's stated value less than 10% of the total equipment value and only approximately 6.5% of Double C Farms' alleged total net worth. The bank did not present any evidence concerning whether this magnitude of reduction in the bank's total security interest would "normally affect the lender's decision to extend credit." The only evidence in this regard was Mitchell's candid admission that the bank would have made the May 2015 loan even if the tractor had not been included on the balance sheet. In light of this record and the requirement that the court determine materiality based on the facts when the debt was obtained, the court determines the bank failed to produce evidence that David's inclusion of the tractor on the balance sheet painted a substantially untruthful picture of Double C Farms' overall financial condition, or that he misrepresented information that would normally affect a lender's decision to extend credit. *Cf. Se. Neb. Coop. Corp. v. Schnuelle (In re Schnuelle)*, No. 08-4014, 2010 WL

13

1440520 (Bankr. D. Neb. Apr. 9, 2010) (determining debtor's overstatement of guaranteed production numbers by at least 25% was materially inaccurate), *aff'd*, 441 B.R. 616 (B.A.P. 8th Cir. 2011).

Because the bank has not offered evidence demonstrating the falsity was material when it made the loan, it did not satisfy this element.

## C.   The balance sheet was a statement respecting an insider's financial condition.

Third, the court must determine whether the statement respected the debtor's or an insider's financial condition.  As discussed above, a statement about a single asset may respect the debtor's or an insider's financial condition if it directly relates to or impacts the debtor's or an insider's aggregate financial condition. *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1761 (2018).

Because David stated that Double C Farms (his insider) owned the tractor and the other equipment in a document summarizing Double C Farms' aggregate financial condition for a loan application, his statement directly related to Double C Farms' aggregate financial condition.  The statement therefore respected an insider's financial condition.

## D.   While the bank reasonably relied on the balance sheet when making the loan, it did not reasonably rely on Double C Farms' alleged ownership of the tractor when deciding to make the loan.

Fourth, the court must determine whether the plaintiff reasonably relied on the debtor's statement.  To satisfy this element, the plaintiff must prove (1) it actually relied on the debtor's statements when deciding to make the loan, and (2) its reliance was reasonable.  If the evidence shows the plaintiff relied on other factors—the

14

debtor's substantial customer history with the bank, good credit history, track record of paying debts, or overall good relationship with the bank, for example—the plaintiff did not actually rely on the false statement. *Northland Nat'l Bank v. Lindsey (In re Lindsey)*, 443 B.R. 808, 815 (B.A.P. 8th Cir. 2011). And if there is no actual reliance, the plaintiff cannot satisfy this element.

In addition to proving actual reliance, the plaintiff must prove its reliance was reasonable. The court determines the reasonableness of a plaintiff's reliance based on the "totality of the circumstances"—whether, for example, "there were any 'red flags' that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate, and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations." *First Nat'l Bank Olathe, Kansas v. Pontow*, 111 F.3d 604, 610 (8th Cir. 1997) (citations omitted).

Here, the court determines the bank reasonably relied on the balance sheet as a whole but did not rely on David's statement concerning the tractor.

The bank reasonably relied on the balance sheet. Mitchell's uncontroverted testimony clearly establishes that the bank followed its usual and customary underwriting procedures in connection with the May 2015 loan, and that the bank relied on the balance sheet when making the loan. The record does not suggest that there were any "red flags" that might have caused the bank, or any reasonable lender for that matter, to call into question David's representations that Double C Farms

15

owned the assets on the balance sheet.  The court, therefore, determines that the bank's reliance on the balance sheet as a whole was reasonable.

But the bank's reliance on the balance sheet as a whole does not control.  As discussed above, the court must focus its analysis on David's misrepresentation about the tractor's ownership.

In light of this focus, the court must determine the bank did not satisfy its burden of proving reliance.  Mitchell conceded that the bank would have made the loan even if David had not lied about the tractor.  Mitchell also testified that, when deciding whether to grant the loan, the bank relied on Double C Farms' net worth and the other assets David represented it owed.  Consequently, the bank did not actually rely on David's false representation about the tractor when it decided to make the loan.

The bank alleges that its attempts to repossess the tractor after the loan was in default prove it actually relied on David's false representation.  But, as discussed above, the relevant time period is when the debt was obtained.  11 U.S.C. § 523(a)(2) (excepting from discharge debts "to the extent *obtained* by" falsity or fraud) (emphasis added); *see Marcusen v. Glen (In re Glen)*, 639 F.3d 530, 533 (8th Cir. 2011) (stating plaintiffs must prove debtors obtained money or property from them concurrent with the debtors' misrepresentation).  Consequently, the bank must prove it relied on David's false statement at the time it made the loan—not when it was trying to collect on its collateral.

Here, the bank's repossession attempts demonstrate that it relied on the representation that Double C Farms owned the tractor after the borrowers defaulted. But the evidence does not demonstrate reliance when the bank made the loan, which is the relevant inquiry for the purposes of § 523(a)(2)(B). Based on the record, the court determines the bank did not actually rely on David's false statement about the tractor when the bank made the loan. The bank, therefore, did not meet its burden to establish this element.

**E.     David made the statement about ownership of the tractor with the intent to deceive the bank.**

Finally, the court must determine whether the debtor made the statement with intent to deceive. Because it is often difficult to find direct evidence of intent to deceive, the court may infer the debtor's intent from circumstances surrounding the statement. *Rosen's, Inc. v. Ghere (In re Ghere)*, 393 B.R. 209, 215 (Bankr. W.D. Mo. 2008). Proof that a debtor made or published a statement knowing the statement was false or with reckless disregard for the truth satisfies the intent element. *Id.* A debtor's mere assertion of honest intent is insufficient to overcome an inference of a debtor's intent to deceive. *Id.*

The bank satisfied its burden to prove this element. David has changed his story about who owns the tractor numerous times, taking several different and inconsistent positions about who owns the tractor for more than a decade. In 2010, David claimed he personally owned the tractor when he pledged it and other equipment to secure a personal loan from The Bank of Orrick. After defaulting on that loan, David pled in his January 2015 state court answer that "at no time has [he]

17

ever owned" the tractor.  Less than five months later, David represented to Bank Northwest that Double C Farms owned the tractor.  In 2019, David claimed Clarence owned the tractor to prevent the bank from repossessing it, and later listed on his Schedule A/B many items of equipment subject to Bank Northwest's lien, but he omitted the tractor.  David testified in his Rule 2004 Examination and at trial that he never owned the tractor.  And neither party offered any evidence proving Double C Farms owned the tractor.  Further complicating matters, David now claims Clarence owned the tractor and either gifted or sold it to David's stepson Austin in 2017.  David's long history of inconsistent representations concerning ownership of the tractor demonstrates that David intentionally lied about the tractor's ownership on the May 2015 balance sheet.

Additionally, when counsel for the Bank asked David why he signed the document if it included equipment he did not own, he stated he "didn't even pay . . . attention to [the balance sheet]," and "just signed [it]."  David's lack of concern for the accuracy of the balance sheet further demonstrates that he acted with reckless disregard for the truth.  Thus, the court infers David intended to deceive the bank when he represented that Double C Farms owned the tractor.

The evidence before the court establishes that David, at a minimum, acted with reckless disregard for the truth of the tractor's ownership or, more likely, flat out lied about the ownership of the tractor for the second time when requesting a loan from a bank.  Consequently, the bank satisfied its burden of proof on this element.

But to except a debt from discharge under § 523(a)(2)(B), the court must determine the plaintiff satisfied its burden of proving all five elements. Though the court determines David made a false written statement respecting an insider's financial condition with the intent to deceive the bank, the court determines that the misrepresentation was not material and the bank did not actually rely on the false statement about the tractor's ownership when deciding to make the loan. The bank therefore did not satisfy its burden of proof under § 523(a)(2)(B).

## II.    11 U.S.C. § 523(a)(6)

The court next considers whether the bank has presented sufficient evidence to deny David's discharge under § 523(a)(6). As the party objecting to the discharge, the bank bears the burden of proving the elements of § 523(a)(6) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 283–91 (1991).

At the outset, the court notes that it appears § 523(a)(6) does not apply in chapter 13 cases. Section 1328(a)(2) lists which exceptions to discharge under § 523(a) apply in chapter 13 cases. It does not list § 523(a)(6). But because neither party raised this issue—and because the court's determination is the same regardless of whether § 523(a)(6) applies—the court nevertheless analyzes § 523(a)(6) below.

Under § 523(a)(6), the court may deny a debtor's discharge if the plaintiff proves the debt is for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Willfulness and maliciousness are distinct requirements; to prevail under § 523(a)(6), the plaintiff

must prove both. *Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638, 641 (8th Cir. 1999).

An injury is willful if it is deliberate or intentional. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). The requirement for an intentional action "triggers . . . the category of 'intentional torts,' as distinguished from negligent or reckless torts." *Id.* Consequentially, "[u]nder § 523(a)(6), a judgement debt cannot be exempt from discharge unless it is based on an intentional tort." *Sailor Music v. Walker (In re Walker)*, 514 B.R. 585, 590 (B.A.P. 8th Cir. 2014). Additionally, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Geiger*, 523 U.S. at 61.

An injury is malicious if the debtor intended to cause harm to the plaintiff. *Waugh v. Eldridge (In re Waugh)*, 95 F.3d 706, 711 (8th Cir. 1996). The plaintiff must prove the debtor, in committing the intentional tort, targeted his or her conduct at the plaintiff. *Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638, 641 (8th Cir. 1999). Conduct is malicious if it is "certain or almost certain" to harm the plaintiff. *Siemer v. Nangle* (*In re Nangle),* 274 F.3d 481, 484 (8th Cir. 2001).

Here, the bank has not satisfied its burden to prove willfulness because it did not prove that David committed an intentional tort. In its complaint, the bank alleges David converted the bank's collateral when he transferred the tractor to Austin without paying the proceeds to the bank. But because the record establishes that neither David nor Double C Farms owned the tractor, neither could have transferred

ownership to Austin.  Thus, there was no conversion.  The bank does not appear to plead any other intentional torts.  Consequently, the bank failed to meet its burden of proving willfulness.

Even if the bank had pled an applicable intentional tort, the court would find that the bank failed to meet its burden of proving willful and malicious injury under § 523(a)(6).  The bank persuaded the court that David lied about the tractor's ownership.  But the bank did not prove that David intended to cause any injury to the bank.  Consequently, the bank did not prove willfulness.

It also did not prove maliciousness.  The bank has not provided evidence showing that, by falsely listing Double C Farms as the owner of the tractor, David intended the bank harm or that his false statements were certain or almost certain to cause the bank harm.  In fact, even the bank believed it was adequately secured by the other collateral when it made the loan.

Because the bank did not allege an applicable tort, and because it proffered no evidence that David acted willfully and maliciously, the bank did not satisfy its burden of proof under § 523(a)(6).

## CONCLUSION

In summary, the court determines that David intentionally lied about the ownership of the tractor to deceive the bank when it made the May 2015 loan.  But such abhorrent behavior, alone, is not sufficient to make out a case under § 523(a)(2)(B) or § 523(a)(6).  Though the court believes David should have to pay

21

some price for his deceitful conduct, the court must, on the record before it, conclude

that the bank has not met its burden of proof under any of the counts in its complaint.

For the reasons explained above, the court determines defendant David

Clevenger may receive a discharge with respect to the debt he owes Bank Northwest.

The clerk of court will enter a judgment on the record consistent with this opinion.


Dated:   December 29, 2020          */s/ Brian T. Fenimore*
                                    BRIAN T. FENIMORE
                                    United States Chief Bankruptcy Judge